**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JANE DOE,
Plaintiff,

v.

NORTHWESTERN UNIVERSITY d/b/a FEINBERG SCHOOL OF MEDICINE; THE MCGAW MEDICAL CENTER OF NORTHWESTERN UNIVERSITY, an Illinois Not For Profit Corporation; JOHN X. THOMAS, an individual; RAYMOND H. CURRY, an individual; ERIC G. NEILSON, an individual; SANDRA SANGUINO, an individual; and DOES I-X, inclusive,
Defendants.

Case No.: 1:13-cv-4515

Honorable Robert W. Gettleman
Magistrate Judge Jeffrey T. Gilbert

**SUPPLEMENT TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW, JANE DOE (the "Plaintiff"), by and through her undersigned counsel, and hereby submits the following Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof.

## I.
## STATEMENT OF FACTS

Plaintiff's Complaint faithfully sets forth the facts of this case. Rather than restating here the facts in their entirety, attached hereto for the Court's convenience is a true and correct copy of the Complaint [Docket No. 1], which is incorporated for all purposes herein by this reference. *See Exhibit 1*.

## II.
## LEGAL ARGUMENT

### A. STANDARD UNDER RULE 12(b)(6) MOTION TO DISMISS.

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir.

2007). To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. *Id.* First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Reger Dev't LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Second, its allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a "speculative level;" if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**B. PLAINTIFF IS PERMITTED TO PROCEED UNDER A FICTITIOUS NAME BECAUSE SHE IS A VICTIM OF SEXUAL ASSAULT.**

Anonymous litigation is permitted under exceptional circumstances. *See Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). "The public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). "Identifying the parties to the proceeding is an important dimension of publicness," as "[t]he people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 871 (7th Cir. 1997).

The presumption that the parties' identities are public information can be rebutted by showing that the harm to the party requesting anonymity exceeds the likely harm to the defendant and to the public from concealment. *City of Chicago*, 360 F.3d at 669. Courts usually find that the presumption has been rebutted when the plaintiff is a child, a victim of a sexual

assault, or a likely target of retaliation by people who would learn his or her identity only from a judicial opinion or other court filing. *Id.*

In this case, Plaintiff alleges that she was sexually assaulted on campus and suffered, as a result, a fractured pelvis that required hip surgery, severe depression and post traumatic stress syndrome. But instead of providing Plaintiff with accommodations, the University required her to take time off and return in the Fall of 2011 to restart her second year of medical school, thus punishing her and delaying her completion of the program. (Compl. ¶ 25). The University's conduct constitutes violations of Plaintiff's rights under the ADA and under the Rehabilitation Act. Plaintiff's allegations regarding her sexual assault are essential to these claims.

Plaintiff would suffer non-negligible harm if it is disclosed to the public that she has been the victim of sexual assault and battery. On balance, the harm to the public in allowing Plaintiff to proceed using the pseudonym Jane Doe is slight. Although the public has a right to know who is using their courts, the public's understanding of this case will not be compromised if Plaintiff is permitted to withhold her name. Left to consider is whether Defendants would be harmed if Plaintiff is allowed to proceed using a pseudonym. Plaintiff has already disclosed her full name to Defendants so their ability to investigate this case and present defenses will not be impaired. Moreover, Defendants failed to identify any harm they would suffer if Plaintiff proceeds under a pseudonym. Accordingly, the harm Plaintiff would suffer if she is forced to publicly disclose her full name outweighs the harm that Defendants and the public would suffer. Plaintiff should be permitted to proceed using a pseudonym.

## C. PLAINTIFF'S COMPLAINT IS NOT BARRED BY RES JUDICATA.

Res judicata prohibits parties "from re-litigating issues that were or could have been raised in" a previous action in which there was final judgment on the merits. *Highway J Citizens*

*Group v. U.S. Dep't of Transportation*, 456 F.3d 734, 741 (7th Cir. 2006). Essentially, res judicata embodies the principle that "claims 'based on the same, or nearly the same, factual allegations' must be joined," *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997), and a prior judgment can "foreclos[e] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n.1 (1984).

For res judicata to apply, three factors are necessary: "(1) an identity of the parties or their privies; (2) an identity of the cause of action; and (3) a final judgment on the merits [in the earlier action]." *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992). A cause of action means "'a single core of operative facts' which give rise to a remedy." *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995) (internal citation omitted).

"Two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Tartt*, 453 F.3d at 822 (internal citation omitted); *see also Bethesda Lutheran Homes & Services, Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001) ("[F]or purposes of res judicata a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy").

In this case, Plaintiff's claims do not arise from the operative facts that were at issue in the state court action. Plaintiff is not suing Defendants in this case based upon the same subject matter that gave rise to the state court action. In that action, Plaintiff brought procedural due process claims against Northwestern University for their unlawful actions in the student promotions committee hearing. As alleged in Plaintiff's state court case, the University established a biased, unfit committee in the student promotions committee process to make decisions regarding Plaintiff's academic performance (Defendants' Ex. A ¶ 15, 16), failed to

acknowledge Plaintiff's evidence that the allegations against her were false regarding failed courses and that her examinations were arbitrarily graded (Defendants' Ex. A ¶ 12, 13), and failed to establish a measurable basis upon which she was dismissed from the University (Defendants' Ex. A, ¶ 14, 18).

The facts of the case before this Court are totally inapposite to the facts of the state court case other than the fact that the Defendant University is a party to both lawsuits. In the instant case, Plaintiff is seeking relief arising out of the University's violations of her rights to receive appropriate accommodations under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and against the individual Defendants for the emotional and physical distress she suffered as a result of their actions in denying her the accommodations to which she is entitled. Plaintiff is not alleging any violations of her process rights and is not challenging her dismissal from the University as she was in the state court case. Plaintiff is seeking damages from the University that arose out their denial of her rights under the ADA and the Rehabilitation Act.

Moreover, there has not been a final judgment on the merits in the first action. Plaintiff's complaint in state court sought only equitable relief and set forth three claims: (1) temporary restraining order; (2) preliminary injunction; (3) permanent injunction. The court in the state court action clearly stated that Plaintiff does not have a remedy in equity but that there was no ruling on any legal claims. (Defendants' Ex. C, p. 54:11-20). The state court stated that there is a potential for a contractual action and "without making any opinion on that" the Plaintiff has access to the courts and may want to pursue that claim. That court further stated that there is a remedy at law available to Plaintiff but that was not before the court sitting in equity. *Id.*, p. 53:4-11. The state court made it clear that there has been no final adjudication on any of

Plaintiff's remedies at law. Accordingly, the motion to dismiss the instant case should not be dismissed as the claims here do not arise from the operative facts that were at issue in the state court action and there has been only a final adjudication on the merits of Plaintiff's equitable claims, not her legal claims. Thus, her claims in the instant action are not barred by res judicata.

**D.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.**

The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). A plaintiff may obtain relief for a time-barred act of discrimination if he can link it with acts that fall within the statutory limitations period. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000); *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 396-97 (7th Cir. 1999) (explaining that the court will treat the series of continuing violations as one continuous act ending within the limitations period). The principle underlying the continuing violation doctrine is "that the plaintiff may not base her (in some cases his) suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996).

The Seventh Circuit has recognized three theories under which a plaintiff may establish a continuing violation. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707-08 (7th Cir. 2002); *Selan* 969 F.2d at 565. The first concerns a situation when an employer makes it difficult for the employee to determine the actual date of the alleged discrimination - in such an instance, the statute of limitations begins to run when the plaintiff knows that the decision has been made

(much akin to the discovery rule). *Tinner*, 308 F.3d at 707. The second theory stems from situations in which the employer has an "express, openly espoused policy that is alleged to be discriminatory." *Id.* The third theory concerns cases in which a plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy, and the challenged practice is evidenced only by an ongoing series of discrete, allegedly discriminatory, acts. *Tinner*, 308 F.3d at 707.

In this case, the Complaint sets forth multiple acts of discrimination in denying Plaintiff accommodations under the ADA and Section 504 that occurred both inside and outside the applicable period of limitations, which establishes a continuous violation on the part of the University. Federal law dictates that Plaintiff is entitled to various "academic adjustments" to ensure that she is not discriminated against, based upon her disabilities. 34 C.F.R. § 104.44. These adjustments can include substitution of specific courses required to complete a degree program and modification "of the manner in which specific courses are conducted." 34 C.F.R. § 104.44(a). Section 504 also requires that a college or university modify how they evaluate academic achievement of a student with disabilities. 34 C.F.R. § 104.44(c).

At the beginning of the 2010-2011 academic year, Plaintiff requested the reasonable accommodation of extra time on her examinations for her learning disability, which was ignored. (Compl. ¶ 20). Plaintiff again requested the accommodations of extra time on examinations and a tutor with experience or training in instructing students with her learning disability in December 2010. Again, this request was ignored. (Compl. ¶ 21). In January 2011, Plaintiff again requested accommodations. This request was also denied with only an explanation that if

she received an accommodation, all of the medical students would also need to receive the same accommodation. (Compl. ¶ 23).

Subsequently, Plaintiff began to suffer from additional disabilities for which she was eligible for accommodations, including severe depression and post traumatic stress disorder as a result of the sexual assault. In February 2011, Plaintiff attended an SPC meeting wherein she spoke to University administrators about the assault she suffered and the fact that she began psychological therapy for PTSD and depression. At the meeting, Plaintiff informed the SPC of her disability and her need for accommodations on the exams due to her learning disability. The SPC disregarded Plaintiff's arguments in violation of Sec. 504 and instead of providing accommodations forced her to take a leave of absence and restart her second year of medical school the following academic year, thus punishing the Plaintiff and delaying her completion of the program due to her disabilities. (Compl. ¶ 26).

In September 2011, Plaintiff again discussed obtaining an accommodation for her medical board course wherein she would be able to supplement her written examinations with oral assessment due to her learning disability. This request was also denied on the basis that she needed "to know the material better." Plaintiff also explains her disability and requests for accommodation to her assigned mentor, Dr. Arv Vanagunas, who also ignored Plaintiff's requests. (Compl. ¶ 28).

In November 2011, Plaintiff was diagnosed with a painful joint disease in her hip, which also constitutes a disability pursuant to the ADA and Sec. 504. Plaintiff requested an accommodation to take her next examination after the Thanksgiving break due to her severe pain and depression. Defendants again refused to provide any type of accommodation and continued

to show complete indifference to Plaintiff's disabilities and requests for reasonable accommodations. (Compl. ¶ 29).

In January 2012, Plaintiff again met with the SPC wherein she again requested accommodations for her disabilities. Defendants again denied Plaintiff's request stating "enough is enough. How many failures does it take? You either know the material or you don't. You can either show it on the exam or you can't." Plaintiff once again tried to explain that her abilities can be adequately assessed on oral exam rather than written exam due to her disability, but her pleas were once again ignored and dismissed. (Compl. ¶ 30).

In April 2012, Plaintiff met with SPC and again explained her disability, her assault that caused her to suffer from depression and post traumatic stress syndrome since December 2010, her health condition which prompted her to submit to two hip surgeries, her many requests to administration, including Dr. Thomas, for reasonable testing accommodations because of her learning disability. The SPC then issued a decision dismissing Plaintiff from the medical school due to repeated exam failures and "lack of insight into what would make [Plaintiff] successful" and raising for the first time a lack of professionalism on Plaintiff's part. (Compl. ¶ 34, 35). Obviously, the SPC did not consider Plaintiff's disabilities in reaching their decision in direct violation of Sec. 504, which requires a university to consider disabilities of a student prior to making academic decisions. These violations continued throughout her dismissal appeal process where none of the university administrators considered her reported disabilities or lack of accommodations in upholding her appeal. (Compl. ¶ 38, 39).

It is clear that the University has, for a period of several years and on multiple occasions, followed a practice of discriminating against Plaintiff and ignoring or denying her requests for reasonable accommodations. In addition to the practice of denying her rights to accommodation

under the ADA and Sec. 504, Defendants acted in violation of Sec. 504 during the SPC hearing and the appeal process by continuing to fail to acknowledge Plaintiff's disabilities and how it affected her academic performance and the fact that she was not provided any accommodations during her second year of medical school. This conduct establishes a continuous violation on the part of the University and as such none of the denials of her requests for accommodation are barred by the statute of limitations. *See Tinner*, 308 F.3d at 707. Defendants' motion to dismiss these claims should be denied.

**E. PLAINTIFF HAS ADEQUATELY PLED HER SECTION 504 AND ADA CLAIMS.**

To establish a claim under either Section 504 or the ADA, in "the context of a student excluded from an educational program," a plaintiff must prove that: "(1) [s]he has a disability; (2) [s]he is otherwise qualified to participate in the defendant's program; and (3) [s]he was excluded from the program on the basis of [her] disability." *Halperin v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012).

Defendants argue that Plaintiff's claim must be dismissed because she did not plead how her disabilities limit a major life activity. This pleading is not required. Defendants cite *Jackson v. Northern Illinois University College of Law*, No. 10 C 01994, 2010 WL 4928880 (N.D. Ill. Nov. 30, 2010) for this proposition. Nowhere in that case does it state that it is fatal to an ADA or Section 504 claim if a plaintiff does not plead how a disability limits a major life activity.

Whether an impairment is substantially limiting "is determined in light of (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or expected permanent or long-term impact." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (citing 29 C.F.R. § 1630 app., § 1630.2(j)). Contrary to Defendants' assertion, Plaintiff has pled her qualifying disabilities, including a learning disability for which she requires

additional time on examinations and is better able to present information orally rather than in a written form. Plaintiff has also pled that she suffers from post traumatic stress disorder, severe depression, and a degenerative joint disease in her hip. Plaintiff has also pled how these disabilities limit her ability to perform academically because she was required to remediate courses when she did not have her requested accommodations, yet when she had the accommodations she required she successfully completed all of her courses. In addition, Plaintiff has specifically pled what accommodations she sought that were denied, including additional time on examinations in her second year of medical school, oral examinations, a deferred examination to allow her to recover from hip surgery. Therefore, Defendants' argument is without merit. Plaintiff's ADA and Section 504 claims should not be dismissed.

**F. BREACH OF CONTRACT.**

Given that the "basic legal relation between a student and a private university or college is contractual in nature," a student may establish that an implied contract existed between himself and the university that entitled the student to a specific right, such as the right to a continuing education or the right not to be suspended without good cause. *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir., 2009) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir.1992)). The "catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract." *Id.* A right established by an implied contract between a student and a university can be a property interest subject to constitutional protection, *id.*, but to receive such protection, the student must first show that the implied contract establishes an entitlement to a tangible continuing benefit, *see Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 574 (1972).

The University's Grievance Procedure for Students with Disabilities states in pertinent part:

> In response to a request made by a qualified student with a documented disability, the University will arrange, at no cost to the student, for the provision of educational auxiliary aids, including sign language interpreters, real-time captioners, note takers, readers, and tutors, determined by the University to be necessary to afford the student with a disability the opportunity for full participation in University programs.

*See Exhibit 2, Grievance Procedures for Students with Disabilities*.

The Seventh Circuit has acknowledged that the catalogs, bulletins, circulars, and regulations of the University become part of the University's contract with the student. *Roth*, 957 F.2d at 416. In this case, the policy on discrimination and Grievance Procedure for Students with Disabilities published in the Northwestern University Student Handbook are contractual terms between the University and Plaintiff. Plaintiff's Complaint set forth the contractual obligations by which the University was required to comply, including providing educational auxiliary aids to Plaintiff, a student with qualifying disabilities. Plaintiff pled that the University failed to comply with said contractual obligations by ignoring or denying Plaintiff's reasonable requests for accommodations. Accordingly, Plaintiff adequately set forth her breach of contract claim, and it should not be dismissed.

**G. NEGLIGENT HIRING TRAINING AND SUPERVISION.**

Plaintiff adequately pled this cause of action and set forth all of the elements of this claim against the University. The Complaint sets forth:

> 75. At all times material and relevant herein, the University had a duty of reasonable care to its students.
>
> 76. At all times relevant herein, the University had a duty not to hire individuals with a propensity towards committing unlawful acts against those who lawfully go about their business and to adequately train and supervise their agents, officers, and employees.

> 77. At all times relevant herein, the University had a duty to protect the public, such as Plaintiff, from the illegal actions of their own agents, officers, employees and others. In addition, the University had a duty not to hire individuals with a propensity towards committing unlawful acts against the public, and to adequately train and supervise their employees.
>
> 78. Likewise, at all times relevant herein, the University had a duty not to hire individuals with a propensity towards committing unlawful acts against those who lawfully go about their business and to adequately train and supervise their agents, officers, and employees.

Defendants argue that the question of whether the University owed a duty of care to its students is a question of law, but they cite no authority that states the University does not owe a duty of reasonable care to its students. Moreover, Plaintiff has pled that the University breached its duty to Plaintiff by hiring individuals who would ignore or arbitrarily deny a student's request for reasonable accommodations for a qualified disability and by failing to adequately train or supervise its employees regarding student requests for reasonable accommodations for a qualified disability. As a result of the University's negligence, Plaintiff was arbitrarily denied accommodation and suffered the injuries for which she complains. Plaintiff adequately pled this cause of action, and it should not be dismissed.

**H. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED).**

Plaintiff alleges and has set forth facts showing that the Defendants' conduct constitutes: (1) extreme and outrageous conduct; (2) intending or knowing there was a high probability the Plaintiff would suffer severe emotional distress; (3) which resulted in Plaintiff suffering severe emotional distress. Defendants have acted intentionally or with reckless disregard to the probability that the Plaintiff would suffer emotional distress by ignoring or arbitrarily denying her requests for accommodations, which caused her to suffer academically. Then in a particularly egregious act, after Plaintiff reported her sexual assault to the University, her severe depression and resultant post traumatic stress disorder, and requested accommodations therefor,

Defendants not only denied her request but forced Plaintiff to take a leave of absence and repeat her second year of medical school.

The University then brought Plaintiff before the SPC for a recommendation that she be dismissed from the University after officials discovered Plaintiff would likely not be able to receive accommodations on the National Board of Medical Examiners USMLE Step 1 exam. (Compl. ¶ 32). The University intentionally and maliciously denied her accommodations and arbitrarily dismissed her from the University. These actions were deliberately intended to hurt Plaintiff and delay or destroy her medical career and caused Plaintiff to suffer and continue to suffer great mental and emotional harm, anguish, insecurity, self-revulsion, damage to his self-esteem, and self-worth, shame and humiliation; including, but not limited to, severe and clinical depression, anxiety, loss of sleep, loss of appetite, and physical pain. Accordingly, Plaintiff has established all elements of her claim for intentional infliction of emotional distress and Defendants' motion to dismiss this claim should be denied.

## I. IF THE COURT IS INCLINED TO GRANT ANY PORTION OF DEFENDANTS' MOTION, PLAINTIFF REQUESTS LEAVE TO AMEND HER COMPLAINT.

While Fed. R. Civ. P. 15 places leave to amend within the sound discretion of the trial court, a court must remain guided by "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *See Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Where there is there is an absence of bad faith, undue delay, dilatory motives or prejudice to the non-moving party and the proposed amendment is not futile, leave should generally be granted. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). In finding that leave to amend should be liberally granted in that case, the Seventh Circuit Court of Appeals stated that the trial

court abused its discretion particularly when it could not be said to a certainty that the plaintiff cannot state a claim upon which relief can be granted. *See Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978).

The factual history of the events giving rise to this litigation are extensive. In the event that this Court were to find any of Plaintiff's causes of action insufficient, Plaintiff requests leave to amend her Complaint.

## III.
## CONCLUSION

Having established that Plaintiff's Complaint is sufficiently pled and that each cause of action sufficiently states a claim for which relief may be granted, Plaintiff prays that this Court will deny Defendants' Motion to Dismiss in its entirety.

DATED this 22nd day of January, 2014.

**THE BACH LAW FIRM, LLC**

By: */s/ Jason J. Bach*
JASON J. BACH, ESQ.
6053 South Fort Apache Road, Suite 130
Las Vegas, NV 89148
*Attorneys for Plaintiff*

**KOREY COTTER HEATHER & RICHARDSON**

By: */s/ Elliot Richardson*
ELLIOT RICHARDSON
Two First National Plaza
20 South Clark St., Suite 500
Chicago, IL 60603
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Jason J. Bach, an attorney, certifies that on January 22, 2014, he electronically filed the above *SUPPLEMENT TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS* with the Clerk of the Court by using the CM/ECF system, which sent notification of such filing to all parties of record.

    */s/ Jason J. Bach*
    Attorney for Plaintiff